EXHIBIT 1

**UNITED STATES OF AMERICA**
**BEFORE THE NATIONAL LABOR RELATIONS BOARD**
**REGION 19**

**NEXSTAR BROADCASTING, INC.**
**d/b/a KOIN-TV**

     **and**

**NATIONAL ASSOCIATION OF BROADCAST**
**EMPLOYEES & TECHNICIANS, THE**
**BROADCASTING AND CABLE TELEVISION**
**WORKERS SECTOR OF THE COMMUNICATIONS**
**WORKERS OF AMERICA, LOCAL 51, AFL-CIO**

**Cases   19-CA-248735**
**19-CA-255180**

## ORDER CONSOLIDATING CASES, CONSOLIDATED COMPLAINT AND NOTICE OF HEARING

Pursuant to §§ 102.33 of the Rules and Regulations of the National Labor Relations Board (the "Board"), and to avoid unnecessary costs or delay, **IT IS ORDERED THAT** Cases 19-CA-248735 and 19-CA-255180, which are based on charges filed by National Association of Broadcast Employees & Technicians, the Broadcasting and Cable Television Workers Sector of the Communications Workers of America, Local 51, AFL-CIO ("Union"), against Nexstar Broadcasting, Inc. d/b/a KOIN-TV ("Respondent"), are consolidated.

This Order Consolidating Cases, Consolidated Complaint and Notice of Hearing ("Consolidated Complaint"), which is based on these charges, is issued pursuant to § 10(b) of the National Labor Relations Act (the "Act"), 29 U.S.C. § 151 *et seq.*, and § 102.15 of the Board's Rules and Regulations, and alleges Respondent has violated the Act as described below.

1.

(a)     The charge in Case 19-CA-248735 was filed by the Union on September 23, 2019, and a copy was served on Respondent by U.S. mail on September 24, 2019.

(b)     The amended charge in Case 19-CA-248735 was filed by the Union on April 23, 2020, and a copy was served on Respondent by U.S. mail on April 23, 2020.

(c)     The charge in Case 19-CA-255180 was filed by the Union on January 24, 2020, and a copy was served on Respondent by U.S. mail on January 27, 2020.

2.

(a)     At all material times, Respondent has been a corporation with an office and place of business in Portland, Oregon (the "facility" or "KOIN-TV"), and has been engaged in the operation of a television station.

(b)     On or about January 17, 2017, Respondent purchased the business of LIN Television Corporation, a Media General Company, d/b/a KOIN-TV ("Media General KOIN-TV"), and since then has continued to operate the business of Media General KOIN-TV in basically unchanged form, and has employed as a majority of its employees individuals who were previously employees of Media General KOIN-TV.

(c)     Based on its operations described above in paragraphs 2(a) and 2(b), Respondent has continued as the employing entity and is a successor to Media General KOIN-TV.

(d)     In conducting its operations during the 12-month period ending December 31, 2019, a representative period, Respondent derived gross revenues in excess of $100,000.

(e)     In conducting its operations during the 12-month period ending December 31, 2019, a representative period, Respondent purchased and received at the facility goods valued in excess of $50,000 directly from points outside the State of Oregon.

(f)     At all material times, Respondent has been an employer engaged in commerce within the meaning of §§ 2(2), (6), and (7) of the Act.

3.

At all material times, the Union has been a labor organization within the meaning of § 2(5) of the Act.

4.

At all material times, the following individuals held the positions set forth opposite their respective names and have been supervisors of Respondent within the meaning of § 2(11) of the Act and/or agents of Respondent within the meaning of § 2(13) of the Act, acting on Respondent's behalf:

Rick Brown          –  Director of Technology
Terri Lynn Bush  –  Associate Counsel and VP Human Resources
Patrick Nevin     –  Vice President and General Manager
Casey Wenger     –  Business Administrator
Lisa Newell         –  Business Administrator

5.

(a)     The following employees of Respondent (the "Units") constitute units appropriate for the purposes of collective bargaining within the meaning of § 9(b) of the Act:

The first, as certified by the National Labor Relations Board, consists of all regular full-time and regular part-time engineers and production employees, but excluding chief engineer, office clericals,

professionals, guards and supervisors as defined in the Act, and all other employees of KOIN-TV.

The second, as voluntarily recognized by the parties, consists of all regular full-time and regular part-time news, creative services employees, and web producers, but excluding news producers, IT employees, on-air talent (aka "performer"), office clericals, professionals, guards and supervisors as defined in the Act and all other employees of KOIN-TV.

(b)    At all material times until January 17, 2017, the Union had been the exclusive collective-bargaining representative of the Units employed by Media General KOIN-TV, and during that time recognized as such representative by Media General KOIN-TV.    This recognition was embodied in successive collective bargaining agreements, the most recent of which was in effect from July 29, 2015, to July 28, 2017 (the "Expired CBA").

(c)    At all material times since January 17, 2017, based on the facts described above in paragraphs 2, 3, 5(a), and 5(b), the Union has been the designated exclusive collective-bargaining representative of the Units.

(d)    At all material times, based on § 9(a) of the Act, the Union has been the exclusive collective-bargaining representative of the Units.

6.

At various times from about June 21, 2017, through December 10, 2019, Respondent and the Union met for the purposes of negotiating a successor collective-bargaining agreement to the Expired CBA.

7.

(a)    As the Board found in 367 NLRB No. 117 (2019), Respondent failed, refused, and unreasonably delayed in providing information to the Union in 2017 that was

necessary to the Union's performance of its bargaining duties, in violation of §§ 8(a)(1) and (5) of the Act.

(b)     As the Board found in 369 NLRB No. 61 (2020), Respondent made unilateral changes in 2017 and 2018 to terms and conditions of the Units' employment after the Expired CBA, in violation of §§ 8(a)(1) and (5) of the Act.

(c)     As an Administrative Law Judge found in JD 26-20 (Case 19-CA-232897, June 3, 2020), Respondent discriminatorily issued a written warning to Unit employee and primary employee bargaining representative Ellen Hansen in violation of §§ 8(a)(1) and (3) of the Act.

8.

(a)     Since about March 23, 2019, Respondent has regularly defamed and denigrated the Union to its Units' employees via its bargaining update memos to employees.

(b)     Since about March 23, 2019, and specifically in May and July 2019, Respondent has failed to meet and bargain with the Union for a successor to the Expired CBA, without explanation.

(c)     Since about March 23, 2019, and specifically in January of 2020, Respondent has failed and refused to meet at reasonable times and/or places for bargaining:

(i)     On about January 8, 2020, Respondent canceled the bargaining sessions scheduled for January 23 and 24, 2020; and

(ii)    On January 14 and 15, 2020, Respondent double-booked its representatives for bargaining in another state on the same dates it

had previously agreed to meet with the Union, and then cancelled its agreed-upon bargaining sessions with the Union in reliance upon its own double-booking.

9.

(a)    At all material times from March 23, 2019, through December 10, 2019, Respondent opposed the Union's proposal regarding union security without a legitimate business justification.

(b)    On about April 23, 2019, the Union requested that Respondent bargain about the Units' wages.

(c)    Since on or about March 23, 2019, Respondent has failed and refused to bargain collectively about the subjects set forth above in paragraphs 9(a) and 9(b), including by failing to make proposals related to those issues.

(d)    The subject(s) set forth above in paragraphs 9(a) through 9(c) relate to the wages, hours, and other terms and conditions of employment of the Units and are mandatory subjects for the purposes of collective bargaining.

10.

(a)    On about April 24, 2019, the Union requested that Respondent bargain about health insurance for its Units' employees.

(b)    From about April 24, 2019, until December 2019, Respondent delayed in responding to the Union's proposal on health insurance for its Units' employees.

(c)    Since on or about April 24, 2019, Respondent has failed and refused to bargain collectively about the subjects set forth above in paragraphs 10(a) and 10(b), including by failing to make proposals related to those issues.

(d)    The subject set forth above in paragraphs 10(a) through 10(c) relates to the wages, hours, and other terms and conditions of employment of the Units and are mandatory subjects for the purposes of collective bargaining.

11.

(a)    Since on or about June 27, 2019, Respondent insisted, as a condition of reaching any collective-bargaining agreement, that the Union agree to change its dues and initiation fee structure.

(b)    The condition described above in paragraph 11(a) is not a mandatory subject for the purposes of collective bargaining.

(c)    Since on or about June 27, 2019, in support of the condition described above in paragraph 11(a), Respondent has linked non-mandatory subjects with mandatory subjects, including Union Security, and demanded that the Union bargain over the non-mandatory subjects if Respondent were to reach agreement on the mandatory subjects.

12.

(a)    By its overall conduct at various times since about June 21, 2017, including the conduct described above in paragraphs 7 through 11, Respondent has engaged in bargaining with no intention of reaching agreement (surface bargaining); insisted upon proposals that are predictably unacceptable to the Union; refused to meet at reasonable times and/or places for bargaining; conditioned negotiations on non-mandatory subjects of bargaining; and denigrated the Union in the eyes of the Units' employees.

(b)    By its overall conduct at various times since about June 21, 2017, including the conduct described above in paragraphs 7 through 12(a), Respondent has failed and refused to bargain in good faith with the Union as the exclusive collective-bargaining representative of the Units.

13.

On about January 8, 2020, Respondent withdrew its recognition of the Union as the exclusive collective-bargaining representative of the Units.

14.

By the conduct described above in paragraphs 7 through 13, Respondent has been failing and refusing to bargain collectively with the Union as the exclusive collective-bargaining representative of its employees in violation of §§ 8(a)(1) and (5) of the Act.

15.

The unfair labor practice of Respondent described above affects commerce within the meaning of §§ 2(6) and (7) of the Act.

**WHEREFORE**, as part of the remedy for Respondent's unfair labor practices alleged above, the General Counsel seeks an Order requiring Respondent to bargain in good faith with the Union, on request, for the period required by *Mar Jac Poultry*, as the recognized bargaining representative of the Units.

**WHEREFORE**, as part of the remedy for the unfair labor practices alleged above, the General Counsel seeks an Order requiring that at a meeting or meetings scheduled to ensure the widest possible attendance, that a supervisor or agent of Respondent identified above in Paragraph 4 read the Notice to the Employees in English on worktime in the presence of a Board agent.  Alternatively, the General Counsel seeks an order requiring that

Respondent promptly have a Board agent read the Notice to Employees during worktime in the presence of Respondent's supervisors and agents identified above in paragraph 4.

**WHEREFORE**, as part of the remedy for the unfair labor practices alleged above, the General Counsel seeks an Order requiring Respondent to: (1) bargain on request within 15 days of a Board Order; (2) bargain on request for a minimum of 15 hours a week until an agreement or lawful impasse is reached or until the parties agree to a respite in bargaining; (3) prepare written bargaining progress reports every 15 days and submit them to the Regional Director and also serve the reports on the Union to provide the Union with an opportunity to reply; and (4) make whole employee negotiators for any earnings lost while attending bargaining sessions. The General Counsel further seeks all other relief as may be just and proper to remedy the unfair labor practices alleged.

## ANSWER REQUIREMENT

Respondent is notified that, pursuant to §§ 102.20 and 102.21 of the Board's Rules and Regulations, it must file an answer to the Consolidated Complaint.  The answer must be **received by this office on or before July 14, 2020.**  Respondent must serve a copy of the answer on each of the other parties.

The answer must be filed electronically through the Agency's website.  To file electronically, go to www.nlrb.gov, click on **E-File Documents,** enter the NLRB Case Number, and follow the detailed instructions.  The responsibility for the receipt and usability of the answer rests exclusively upon the sender.  Unless notification on the Agency's website informs users that the Agency's E-Filing system is officially determined to be in technical failure because it is unable to receive documents for a continuous period of more than 2 hours after 12:00 noon (Eastern Time) on the due date for filing, a failure

to timely file the answer will not be excused on the basis that the transmission could not be accomplished because the Agency's website was off-line or unavailable for some other reason.  The Board's Rules and Regulations require that an answer be signed by counsel or non-attorney representative for represented parties or by the party if not represented. *See* § 102.21.  If the answer is a pdf document containing the required signature, no paper copies of the answer need to be transmitted to the Regional Office.  However, if the answer to a complaint is not a pdf file containing the required signature, then the E-filing rules require that such answer containing the required signature continue to be submitted to the Regional Office by traditional means within three (3) business days after the date of electronic filing.  Service of the answer on each of the other parties must still be accomplished by means allowed under the Board's Rules and Regulations.  The answer may not be filed by facsimile transmission.  If no answer is filed, or if an answer is filed untimely, the Board may find, pursuant to a Motion for Default Judgment, that the allegations in the Consolidated Complaint are true.

### NOTICE OF HEARING

PLEASE TAKE NOTICE THAT **at 1 p.m.** on the **13th day of October, 2020**, at the **Green-Wyatt Federal Building, 1220 SW 3rd Avenue, Suite 605, Portland, Oregon, or via Zoom videoconference, if appropriate given the circumstances and status of the COVID-19 pandemic**, and on consecutive days thereafter until concluded, a hearing will be conducted before an administrative law judge of the National Labor Relations Board.  At the hearing, Respondent and any other party to this proceeding have the right to appear and present testimony regarding the allegations in this Consolidated Complaint. The procedures to be followed at the hearing are described in the attached Form NLRB-

4668. The procedure to request a postponement of the hearing is described in the attached Form NLRB-4338.

Dated at Seattle, Washington, this 30th day of June, 2020.

Ronald K. Hooks, Regional Director
National Labor Relations Board, Region 19
Jackson Federal Building
915 2nd Ave., Ste. 2948
Seattle, WA 98174

Attachments

11

Form NLRB-4668
(6-2014)

# Procedures in NLRB Unfair Labor Practice Hearings

The attached complaint has scheduled a hearing that will be conducted by an administrative law judge (ALJ) of the National Labor Relations Board who will be an independent, impartial finder of facts and applicable law. **You may be represented at this hearing by an attorney or other representative.** If you are not currently represented by an attorney, and wish to have one represent you at the hearing, you should make such arrangements as soon as possible. A more complete description of the hearing process and the ALJ's role may be found at Sections 102.34, 102.35, and 102.45 of the Board's Rules and Regulations. The Board's Rules and regulations are available at the following link: www.nlrb.gov/sites/default/files/attachments/basic-page/node-1717/rules_and_regs_part_102.pdf.

The NLRB allows you to file certain documents electronically and you are encouraged to do so because it ensures that your government resources are used efficiently. To e-file go to the NLRB's website at www.nlrb.gov, click on "e-file documents," enter the 10-digit case number on the complaint (the first number if there is more than one), and follow the prompts. You will receive a confirmation number and an e-mail notification that the documents were successfully filed.

**Although this matter is set for trial, this does not mean that this matter cannot be resolved through a settlement agreement**. The NLRB recognizes that adjustments or settlements consistent with the policies of the National Labor Relations Act reduce government expenditures and promote amity in labor relations and encourages the parties to engage in settlement efforts.

## I.    BEFORE THE HEARING

The rules pertaining to the Board's pre-hearing procedures, including rules concerning filing an answer, requesting a postponement, filing other motions, and obtaining subpoenas to compel the attendance of witnesses and production of documents from other parties, may be found at Sections 102.20 through 102.32 of the Board's Rules and Regulations. In addition, you should be aware of the following:

- **Special Needs:** If you or any of the witnesses you wish to have testify at the hearing have special needs and require auxiliary aids to participate in the hearing, you should notify the Regional Director as soon as possible and request the necessary assistance. Assistance will be provided to persons who have handicaps falling within the provisions of Section 504 of the Rehabilitation Act of 1973, as amended, and 29 C.F.R. 100.603.

- **Pre-hearing Conference:** One or more weeks before the hearing, the ALJ may conduct a telephonic prehearing conference with the parties. During the conference, the ALJ will explore whether the case may be settled, discuss the issues to be litigated and any logistical issues related to the hearing, and attempt to resolve or narrow outstanding issues, such as disputes relating to subpoenaed witnesses and documents. This conference is usually not recorded, but during the hearing the ALJ or the parties sometimes refer to discussions at the pre-hearing conference. You do not have to wait until the prehearing conference to meet with the other parties to discuss settling this case or any other issues.

## II.    DURING THE HEARING

The rules pertaining to the Board's hearing procedures are found at Sections 102.34 through 102.43 of the Board's Rules and Regulations. Please note in particular the following:

- **Witnesses and Evidence**: At the hearing, you will have the right to call, examine, and cross-examine witnesses and to introduce into the record documents and other evidence.

- **Exhibits:** **Each exhibit offered in evidence must be provided in duplicate to the court reporter and a copy of each of each exhibit should be supplied to the ALJ and each party when the exhibit is offered in evidence.** If a copy of any exhibit is not available when the original is received, it will be the responsibility of the party offering such exhibit to submit the copy to the ALJ before the close of hearing. If a copy is not

Form NLRB-4668
(6-2014)

submitted, and the filing has not been waived by the ALJ, any ruling receiving the exhibit may be rescinded and the exhibit rejected.

- **Transcripts**:  An official court reporter will make the only official transcript of the proceedings, and all citations in briefs and arguments must refer to the official record. The Board will not certify any transcript other than the official transcript for use in any court litigation.  Proposed corrections of the transcript should be submitted, either by way of stipulation or motion, to the ALJ for approval.  Everything said at the hearing while the hearing is in session will be recorded by the official reporter unless the ALJ specifically directs off-the-record discussion.  If any party wishes to make off-the-record statements, a request to go off the record should be directed to the ALJ.

- **Oral Argument:**  You are entitled, on request, to a reasonable period of time at the close of the hearing for oral argument, which shall be included in the transcript of the hearing.  Alternatively, the ALJ may ask for oral argument if, at the close of the hearing, if it is believed that such argument would be beneficial to the understanding of the contentions of the parties and the factual issues involved.

- **Date for Filing Post-Hearing Brief**:  Before the hearing closes, you may request to file a written brief or proposed findings and conclusions, or both, with the ALJ.  The ALJ has the discretion to grant this request and to will set a deadline for filing, up to 35 days.

## III.    AFTER THE HEARING

The Rules pertaining to filing post-hearing briefs and the procedures after the ALJ issues a decision are found at Sections 102.42 through 102.48 of the Board's Rules and Regulations.  Please note in particular the following:

- **Extension of Time for Filing Brief with the ALJ:**  If you need an extension of time to file a post-hearing brief, you must follow Section 102.42 of the Board's Rules and Regulations, which requires you to file a request with the appropriate chief or associate chief administrative law judge, depending on where the trial occurred.  You must immediately serve a copy of any request for an extension of time on all other parties and furnish proof of that service with your request.  You are encouraged to seek the agreement of the other parties and state their positions in your request.

- **ALJ's Decision:**  In due course, the ALJ will prepare and file with the Board a decision in this matter.  Upon receipt of this decision, the Board will enter an order transferring the case to the Board and specifying when exceptions are due to the ALJ's decision.  The Board will serve copies of that order and the ALJ's decision on all parties.

- **Exceptions to the ALJ's Decision**:  The procedure to be followed with respect to appealing all or any part of the ALJ's decision (by filing exceptions with the Board), submitting briefs, requests for oral argument before the Board, and related matters is set forth in the Board's Rules and Regulations, particularly in Section 102.46 and following sections.  A summary of the more pertinent of these provisions will be provided to the parties with the order transferring the matter to the Board.

FORM NLRB 4338
(6-90)

**UNITED STATES GOVERNMENT**
**NATIONAL LABOR RELATIONS BOARD**
**NOTICE**

Cases 19-CA-248735 and 19-CA-255180

The issuance of the notice of formal hearing in this case does not mean that the matter cannot be disposed of by agreement of the parties. On the contrary, it is the policy of this office to encourage voluntary adjustments. The examiner or attorney assigned to the case will be pleased to receive and to act promptly upon your suggestions or comments to this end.

An agreement between the parties, approved by the Regional Director, would serve to cancel the hearing. However, unless otherwise specifically ordered, the hearing will be held at the date, hour, and place indicated. Postponements **will not be granted** unless good and sufficient grounds are shown **and** the following requirements are met:

(1) The request must be in writing. An original and two copies must be filed with the Regional Director when appropriate under 29 CFR 102.16(a) or with the Division of Judges when appropriate under 29 CFR 102.16(b).

(2) Grounds must be set forth in **detail**;

(3) Alternative dates for any rescheduled hearing must be given;

(4) The positions of all other parties must be ascertained in advance by the requesting party and set forth in the request; and

(5) Copies must be simultaneously served on all other parties (listed below), and that fact must be noted on the request.

Except under the most extreme conditions, no request for postponement will be granted during the three days immediately preceding the date of hearing.

**E-Service:**

Charles W. Pautsch, Vice President of
Labor and Employment/Associate Counsel
Nexstar Media Group, Inc.
545 E. John Carpenter Fwy., Ste. 700
Irving, TX 75062
   Email: cpautsch@nexstar.tv

Anne I. Yen, Attorney
Weinberg, Roger & Rosenfeld
1001 Marina Village Pkwy., Ste. 200
Alameda, CA 94501-6430
   Email: ayen@unioncounsel.net

Carrie J. Biggs-Adams, President
NABET-CWA, Local 51, AFL-CIO
240 2nd St., Ste. 220
San Francisco, CA 94105
   Email: carrie@nabet51.org

**First Class Mail:**

Nexstar Broadcasting, Inc. d/b/a
KOIN-TV
c/o Human Resource Dept.
222 SW Columbia St., Ste. 102
Portland, OR 97201-6600

EXHIBIT 2

UNITED STATES OF AMERICA

BEFORE THE NATIONAL LABOR RELATIONS BOARD

REGION 19

NEXSTAR BROADCASTING, INC. d/b/a
KOIN-TV

Respondent- Employer

     v.                            Cases:  19-CA-248735
                                                  19-CA-255180

NATIONAL ASSOCIATION OF
BROADCAST EMPLOYEES AND
TECHNICIANS ---COMMUNICATION
WORKERS OF AMERICA,AFL-CIO, Local 51

Charging Party -Union

ANSWER

NEXSTAR  BROADCASTING,  INC.  d/b/a  KOIN-TV,  (hereinafter
"KOIN", "Nexstar" or "Respondent"), pursuant to Section 102.20 of the NLRB
Rules  and  Regulations,  hereby  provides  its  ANSWER  to  the  Consolidated
Complaint  filed  upon  the  Charges  of  the  NATIONAL  ASSOCIATION  OF
BROADCAST  EMPLOYEES  AND  TECHNICIANS ---COMMUNICATION
WORKERS OF AMERICA,  AFL-CIO, Local 51 (hereinafter "NABET" or
"Union").

1

KOIN responds as follows as to each of the allegations made in the Consolidated Complaint and then sets forth the following Defenses with respect to the events alleged in the Consolidated Complaint:

**RESPONSES**

1. (a) As to Paragraph 1(a) of the Complaint, Respondent admits, upon information and belief, that a Charge in 19-CA-248735 was filed by the Union against Respondent, on or about September 23, 2019, and served on it thereafter, but denies all allegations made in that Charge and this Complaint that it violated the National Labor Relations Act.

   (b) As to Paragraph 1(b) of the Complaint, Respondent admits, upon information and belief, that an amended Charge in 19-CA-248735 was filed by the Union against Respondent, on or about April 24, 2020, and served on it thereafter, but denies all allegations made in that amended Charge and this Complaint that it violated the National Labor Relations Act.

   (c) As to Paragraph 1(c) of the Complaint, Respondent admits, upon information and belief, that a Charge in 19-CA-255180 was filed by the Union against Respondent, on or about January 24, 2020, and served on it thereafter, but denies all allegations made in that amended Charge and this Complaint that it violated the National Labor Relations Act.

**2.**    (a). Respondent admits the allegations of Paragraph 2 (a) of the Complaint.

2

(b). Respondent admits the allegations of Paragraph 2 (b) of the Complaint.

(c). Respondent admits the allegations of Paragraph 2 (c) of the Complaint.

(d). Respondent admits the allegations of Paragraph 2 (d) of the Complaint.

(e). Respondent admits the allegations of Paragraph 2 (e) of the Complaint.

(f). Respondent admits the allegations of Paragraph 2 (f) of the Complaint.

3.   Respondent admits the allegations of Paragraph 3 of the Complaint.

4.   Respondent admits the allegation of the Paragraph 4 of the Complaint.

5.   (a). Respondent admits the allegations of Paragraph 5(a) of the Complaint.

(b). Respondent admits the allegations of Paragraph 5(b) of the Complaint.

(c). Respondent admits the allegations of Paragraph 5(c) of the Complaint.

(d). Respondent admits the allegations of Paragraph 5(d) of the Complaint.

6.  Respondent admits the allegations of Paragraph 6 of the Complaint.

7. (a) Respondent denies the allegations in the Charge referenced in Paragraph 7(a) of the Complaint admitting only that a violation was found as alleged in Paragraph 7(a) of the Complaint, and affirmatively states that the violations therein should not be used as a predicate act to this Complaint since they are time-barred and due to the fact that the Charging Party NABET has been found guilty of failing, refusing and unreasonably delaying in providing relevant information to Respondent KOIN necessary for the purpose of collective bargaining on at least two occasions to date: 19-CB-223109 and 19-CB-234944

3

and two additional Charges that are still pending with the National Labor Relations Board in cases and 19-CB-248966 and 19-CB-234944.

(b). Respondent denies the allegations in the Charge referenced in Paragraph 7(b) of the Complaint admitting only that a violation was found as alleged in Paragraph 7(b) of the Complaint but and affirmatively states that the matter is currently under review in 20-71232 and 20-71480 and affirmatively states that the violations therein should not be used as a predicate act to this Complaint since they are time-barred.

(c). Respondent denies the allegations in the Charge referenced in Paragraph 7(c) of the Complaint admitting only that a violation was found as alleged in Paragraph 7(c) of the Complaint but and affirmatively states that Respondent is taking Exceptions to the Board in this matter and that the violations therein should not be used as a predicate act to this Complaint since they are time-barred.

8 (a). Respondent denies the allegations of Paragraph 8(a) of the Complaint and affirmatively states that the Union has frequently and routinely disparaged, defamed and otherwise disrespected the KOIN bargaining committee by making rude, abrasive, and vulgar statements at and away from the bargaining table designed to discourage dialogue and compromise.

(b). Respondent denies the allegations of Paragraph 8(b) of the Complaint.

4

(c).  Respondent denies the allegations of Paragraph 8(c) of the Complaint.

(i) Respondent denies the allegations of Paragraph 8(c)(i) of the Complaint.

(ii) Respondent denies the allegations of Paragraph 8(c)(ii) of the Complaint.

9. (a). Respondent denies the allegations of Paragraph 9(a) of the Complaint and affirmatively states that it had a legitimate basis to oppose in bargaining for various reasons NABET's unlawful and unjustified positions on union security including but not limited to the Union's use of authorization forms which interfered with the section 7 rights and imposed unlawful restraints on resignation from the union and the description of *Beck* rights.

(b). Respondent denies the allegations of Paragraph 9(b) of the Complaint.

(c). Respondent denies the allegations of Paragraph 9(c) of the Complaint.

(d). Respondent admits the allegations of Paragraph 9(d) of the Complaint.

10 (a). Respondent denies the allegations of Paragraph 10(a) of the Complaint.

(b). Respondent denies the allegations of Paragraph 10(b) of the Complaint.

(c). Respondent denies the allegations of Paragraph 10(c) of the Complaint.

(d). Respondent admits the allegations of Paragraph 10(d) of the Complaint.

11. (a). Respondent denies the allegations of Paragraph 11(a) of the Complaint.

(b). Respondent denies the allegations of Paragraph 11(b) of the Complaint.

(c). Respondent denies the allegations of Paragraph 11(c) of the Complaint.

12.(a) Respondent denies the allegations of Paragraph 12(a) of the Complaint, affirmatively asserting that it is NABET, and not KOIN, that has engaged in a pattern of bad-faith surface bargaining conduct over the parties' lengthy negotiations for a successor contract, as set forth in more detail in the paragraph 1 of the 'Defenses' below.

(b) Respondent denies the allegations of Paragraph 12(b) of the Complaint.

13. Respondent admits the allegations of Paragraph 13 of the Complaint.

14. Respondent denies the allegations of Paragraph 14 of the Complaint.

15. Respondent denies the allegations of Paragraph 15 of the Complaint.

## DEFENSES

1. As its first defense, KOIN states that it is NABET, rather than KOIN that has bargained in bad faith by the following, and related acts:

a. refused to bargain in good faith over the mandatory topic of checkoff authorization of initiation fees, claiming falsely that KOIN was attempting bargain over the amount of initiation fees when KOIN was only proposing that it not checkoff initiation fees.

6

b.  engaging in dilatory and evasive tactics designed to frustrate a bargain on terms for a successor contract differing in any material regards from the prior collective bargaining agreement even though that prior agreement contained terms regarding checkoff authorization and initiation fees that are unlawful,

c.  sought to maintain an unlawful requirement in its' collective bargaining agreement with KOIN that bargaining unit employees are required as a condition of employment to make a payment in the form of an initiation fee, which is excessive and discriminatory,

d.  refused to bargain in good faith with KOIN for contractual provisions that did not include a provision for compulsory union or agency shop provisions unlawfully coupled with the above stated excessive initiation fees and dues,

e.  engaging in oppressive, hostile and demeaning conduct at the bargaining table, including referring to KOIN's negotiators in vulgar and derogatory terms,

f.  issuing press releases and bulletins to bargaining unit employees containing false and defamatory statements about the ongoing negotiations between KOIN and NABET Local 51with the purpose and effect of delaying and frustrating good faith bargaining,

g.  repeatedly calling for lengthy caucuses when KOIN negotiators said something that was appeared to be 'upsetting' to the Union's chief negotiator Carrie Biggs-Adams, thus inhibiting free dialogue over disputed items,

h.  refusing to provide KOIN with information necessary and relevant to bargaining in regards to the Union's stated position that it refused to indemnify KOIN in regards to

liability that might arise in connection with the Union's interference with its motor vehicle policy, which led to the filing of 19-CB-223109 which the Regional Director concluded had merit but was dismissed on the condition that the information be provided and that no further violations were committed for the next six months.

i.  shortly after six months passed from the issuance of the Regional Director's decision in 19-CB-223109, NABET again refused to provide KOIN with information necessary and relevant to bargaining in regards to bargaining proposals made by it and KOIN on wages, severance and other then-current topics of bargaining, leading to the Order of the National Labor Relations Board in 19-CB-234944 that NABET bargained in bad faith by delaying for four months in providing in any response whatsoever to the request for information.

j.  refusing to provide KOIN with information necessary and relevant to bargaining in regards to checkoff authorization forms and procedures related to collection of initiation fees and dues that NABET utilized even though those forms and processes were embodied in the parties' expired collective bargaining agreement, with NABET's bargaining representative wrongfully asserting that said information was "none of the Company's business".

k.  refusing to provide KOIN with information necessary and relevant to bargaining in regards to various health and welfare plans sponsored by NABET on the pretext that said plans are only available to members of NABET when KOIN sought the

information for comparative purposes because NABET wrongfully asserted that KOIN's health plans had inadequate coverage.

2. As its second defense, KOIN states that NABET restrained and coerced employees regarding the requirement that they pay excessive dues and initiation fees in order to maintain employment at KOIN-TV and that this unlawful bargaining position, not any conduct on the part of KOIN caused the failure of the parties' to reach a new collective bargaining agreement.

3. As its third defense KOIN states that it had substantial objective evidence that NABET had lost the support of a majority of the employees in the bargaining units that it represented at KOIN-TV, justifying, even requiring, KOIN's withdrawal of recognition on January 7, 2020.

4. As its fourth defense, Respondent states that these charges were filed in bad faith as is evidenced by the fact that prior to and subsequent to the filing of the Charges, the Union has itself failed to bargain in good faith over a multitude of issues

5. As and for its fifth defense, Respondent states that to the extent the allegations made in the Complaint occurred six months prior to September 23, 2019 they are barred by the provisions of section 10(b) of the National Labor Relations Act.

6. As and for its sixth defense Respondent asserts that it is denied administrative due process and its' rights to a fair hearing are violated by the Region's decision to

issue Complaint in this matter while the Region is still investigating numerous Charges that KOIN has filed against NABET.

7.  As and for its seventh defense Respondent asserts that it is denied administrative due process and its' right to a fair hearing by the Region's decision to issue Complaint in this matter and set this matter for hearing without consolidating it with numerous still pending Charges and a Complaint against NABET that arise out of a common nucleus of operative facts, asserting that the parties' dueling claims of 'surface' bargaining should be resolved in a full-evidentiary hearing before an administrative law judge of this Agency where neither party is represented by the General Counsel.

8.  As and for its eighth defense, Respondent asserts that NABET has improperly elected to pursue this unfair labor practice proceeding in lieu of requesting representation elections in the two bargaining units that it lost support due in part to its' own illegal and coercive conduct.

9.  As and for its ninth defense Respondent assert unclean hands due to its own illegal and coercive conduct by bargaining in bad faith and coercing bargaining unit members in their exercise of Section 7 rights and as a result, should be denied any equitable relief.

10. As and for its tenth defense Respondent assert that NABET is equitably barred from challenging the withdrawal of recognition in the two units because it has consistently violated the Act of its' own accord during the parties' bargaining of a new Agreement.

11.  As and for its eleventh defense Respondent asserts that consolidation of the two charges brought under this Complaint, without consolidating other pending charges against NABET, is improper.

12. As and for its twelfth defense, Respondent asserts that the Region in issuing this Complaint has failed to follow its own Rules and Regulations by not giving priority to an unfair labor practice Charge(19-CC-242731) that Respondent filed against NABET over a year ago alleging a  violation of section 8(b)(4) in connection with unlawful secondary picketing of a neutral advertiser of KOIN. *NLRB Rules & Regulations Sections 102.89 and 102.95.*

13. As and for its thirteenth defense, Respondent assert that the Remedy sought by the General Counsel is wholly unjustified.

14. As and for its fourteenth defense, Respondent asserts, upon information and belief, that the Region in issuing this Complaint without sending the Charge relating to withdrawal of recognition to the General Counsel's Division of Advice violated the direction of outstanding General Counsel Memorandum(s) regarding the *Levitz* doctrine.

WHEREFORE, this Complaint should be dismissed in its entirety and the Respondent should recover its costs.

Dated: July 14, 2020

NEXSTAR BROADCASTING, Inc. d/b/a KOIN-TV

*Charles W. Pautsch*

By: Charles W. Pautsch Esq.


Charles W. Pautsch, Esq.
Associate Counsel
Nexstar Media Group, Inc.
545 John Carpenter Freeway Suite 700
Irving, TX 75062
Telephone: (972) 632-9623
cpautsch@nexstar.tv

### CERTIFCATE OF SERVICE

I hereby certify that I served the foregoing ANSWER on July 14, 2020 on counsel for the Charging Party Union Anne Yen by e-mailing a copy of same to her at ayen@unioncounsel.net and on the Regional Director Ronald K. Hooks, Region 19, acting in his capacity as Counsel for the General Counsel, by e-mailing a copy of same to him at **Ronald.hooks@nlrb.gov**

*Charles W. Pautsch*

Charles W. Pautsch

12

EXHIBIT 3

**UNITED STATES OF AMERICA**
**BEFORE THE NATIONAL LABOR RELATIONS BOARD**
**REGION 19**

**NEXSTAR BROADCASTING, INC.**
**d/b/a KOIN-TV**

    **and**

**NATIONAL ASSOCIATION OF BROADCAST**
**EMPLOYEES & TECHNICIANS, THE**
**BROADCASTING AND CABLE TELEVISION**
**WORKERS SECTOR OF THE COMMUNICATIONS**
**WORKERS OF AMERICA, LOCAL 51, AFL-CIO**

**Cases**  **19-CA-248735**
        **19-CA-255180**
        **19-CA-259398**
        **19-CA-262203**

## <u>ORDER FURTHER CONSOLIDATING CASES, SECOND CONSOLIDATED COMPLAINT, AND NOTICE OF HEARING</u>

On June 30, 2020, an Order Consolidating Cases, Consolidated Complaint and Notice of Hearing issued in Cases 19-CA-248739 and 19-CA-255180 based on charges filed by National Association of Broadcast Employees & Technicians, the Broadcasting and Cable Television Workers Sector of the Communications Workers of America, Local 51, AFL-CIO ("Union"), against Nexstar Broadcasting, Inc. d/b/a KOIN-TV ("Respondent"), alleging that Respondent engaged in unfair labor practices in violation of the National Labor Relations Act (the "Act"), 29 U.S.C. § 151 *et seq.* Pursuant to §§ 102.33 of the Rules and Regulations of the National Labor Relations Board (the "Board"), and to avoid unnecessary costs or delay, **IT IS ORDERED THAT** those cases are further consolidated with Cases 19-CA-259398 and 19-CA-262203, filed by the Union, which allege that Respondent has engaged in further unfair labor practices within the meaning of the Act.

This Second Consolidated Complaint and Notice of Hearing, issued pursuant to § 10(b) of the Act, 29 U.S.C. § 151 *et seq.*, is based on these further consolidated cases and alleges that Respondent has violated the Act as described below.

1.

(a)     The charge in Case 19-CA-248735 was filed by the Union on September 23, 2019, and a copy was served on Respondent by U.S. mail on September 24, 2019.

(b)     The amended charge in Case 19-CA-248735 was filed by the Union on April 23, 2020, and a copy was served on Respondent by U.S. mail on the same day.

(c)     The charge in Case 19-CA-255180 was filed by the Union on January 24, 2020, and a copy was served on Respondent by U.S. mail on January 27, 2020.

(d)     The charge in Case 19-CA-259398 was filed by the Union on April 21, 2020 and a copy was served on Respondent by U.S. mail on April 22, 2020.

(e)     The amended charge in Case 19-CA-259398 was filed by the Union on June 5, 2020 and a copy was served on Respondent by U.S. mail on the same day.

(f)     The second amended charge in Case 19-CA-259398 was filed by the Union on July 30, 2020 and a copy was served on Respondent by U.S. mail on the same day.

(g)     The charge in Case 19-CA-262203 was filed by the Union on June 25, 2020 and a copy was served on Respondent by U.S. mail on the same day.

2.

(a)     At all material times, Respondent has been a corporation with an office and place of business in Portland, Oregon (the "facility" or "KOIN-TV"), and has been engaged in the operation of a television station.

(b)     On or about January 17, 2017, Respondent purchased the business of LIN Television Corporation, a Media General Company, d/b/a KOIN-TV ("Media General KOIN-TV"), and since then has continued to operate the business of Media General KOIN-TV in basically unchanged form, and has employed as a majority of its employees individuals who were previously employees of Media General KOIN-TV.

(c)     Based on its operations described above in paragraphs 2(a) and 2(b), Respondent has continued as the employing entity and is a successor to Media General KOIN-TV.

(d)     In conducting its operations during the 12-month period ending December 31, 2019, a representative period, Respondent derived gross revenues in excess of $100,000.

(e)     In conducting its operations during the 12-month period ending December 31, 2019, a representative period, Respondent purchased and received at the facility goods valued in excess of $50,000 directly from points outside the State of Oregon.

(f)     At all material times, Respondent has been an employer engaged in commerce within the meaning of §§ 2(2), (6), and (7) of the Act.

3.

At all material times, the Union has been a labor organization within the meaning of § 2(5) of the Act.

4.

At all material times, the following individuals held the positions set forth opposite their respective names and have been supervisors of Respondent within the meaning of

§ 2(11) of the Act and/or agents of Respondent within the meaning of § 2(13) of the Act, acting on Respondent's behalf:

| | | |
|---|---|---|
| Rick Brown | – | Director of Technology |
| Terri Lynn Bush | – | Associate Counsel and VP Human Resources |
| Rich Kurz | – | News Director |
| Patrick Nevin | – | Vice President and General Manager |
| Lisa Newell | – | Business Administrator |
| Casey Wenger | – | Business Administrator |

5.

(a)     The following employees of Respondent (the "Units") constitute units appropriate for the purposes of collective bargaining within the meaning of § 9(b) of the Act:

> The first, as certified by the National Labor Relations Board, consists of all regular full-time and regular part-time engineers and production employees, but excluding chief engineer, office clericals, professionals, guards and supervisors as defined in the Act, and all other employees of KOIN-TV.

> The second, as voluntarily recognized by the parties, consists of all regular full-time and regular part-time news, creative services employees, and web producers, but excluding news producers, IT employees, on-air talent (aka "performer"), office clericals, professionals, guards and supervisors as defined in the Act and all other employees of KOIN-TV.

(b)     At all material times until January 17, 2017, the Union had been the exclusive collective-bargaining representative of the Units employed by Media General KOIN-TV, and during that time recognized as such representative by Media General KOIN-TV.   This recognition was embodied in successive collective bargaining agreements, the most recent of which was in effect from July 29, 2015, to July 28, 2017 (the "Expired CBA").

(c)    At all material times since January 17, 2017, based on the facts described above in paragraphs 2, 3, 5(a), and 5(b), the Union has been the designated exclusive collective-bargaining representative of the Units.

(d)    At all material times, based on § 9(a) of the Act, the Union has been the exclusive collective-bargaining representative of the Units.

6.

At various times from about June 21, 2017, through December 10, 2019, Respondent and the Union met for the purposes of negotiating a successor collective-bargaining agreement to the Expired CBA.

7.

(a)    As the Board found in 367 NLRB No. 117 (2019), Respondent failed, refused, and unreasonably delayed in providing information to the Union in 2017 that was necessary to the Union's performance of its bargaining duties, in violation of §§ 8(a)(1) and (5) of the Act.

(b)    As the Board found in 369 NLRB No. 61 (2020), Respondent made unilateral changes in 2017 and 2018 to terms and conditions of the Units' employment after the Expired CBA, in violation of §§ 8(a)(1) and (5) of the Act.

(c)    As an Administrative Law Judge found in JD 26-20 (Case 19-CA-232897, June 3, 2020), Respondent discriminatorily issued a written warning to Unit employee and primary employee bargaining representative Ellen Hansen in violation of §§ 8(a)(1) and (3) of the Act.

8.

(a)     Since about March 23, 2019, Respondent has regularly defamed and denigrated the Union to its Units' employees via its bargaining update memos to employees.

(b)     Since about March 23, 2019, and specifically in May and July 2019, Respondent has failed to meet and bargain with the Union for a successor to the Expired CBA, without explanation.

(c)     Since about March 23, 2019, and specifically in January of 2020, Respondent has failed and refused to meet at reasonable times and/or places for bargaining:

      (i)     On about January 8, 2020, Respondent canceled the bargaining sessions scheduled for January 23 and 24, 2020; and

      (ii)     On January 14 and 15, 2020, Respondent double-booked its representatives for bargaining in another state on the same dates it had previously agreed to meet with the Union, and then cancelled its agreed-upon bargaining sessions with the Union in reliance upon its own double-booking.

9.

(a)     At all material times from March 23, 2019, through December 10, 2019, Respondent opposed the Union's proposal regarding union security without a legitimate business justification.

(b)     On about April 23, 2019, the Union requested that Respondent bargain about the Units' wages.

(c)     Since on or about March 23, 2019, Respondent has failed and refused to bargain collectively about the subjects set forth above in paragraphs 9(a) and 9(b), including by failing to make proposals related to those issues.

(d)     The subject(s) set forth above in paragraphs 9(a) through 9(c) relate to the wages, hours, and other terms and conditions of employment of the Units and are mandatory subjects for the purposes of collective bargaining.

10.

(a)     On about April 24, 2019, the Union requested that Respondent bargain about health insurance for its Units' employees.

(b)     From about April 24, 2019, until December 2019, Respondent delayed in responding to the Union's proposal on health insurance for its Units' employees.

(c)     Since on or about April 24, 2019, Respondent has failed and refused to bargain collectively about the subjects set forth above in paragraphs 10(a) and 10(b), including by failing to make proposals related to those issues.

(d)     The subject set forth above in paragraphs 10(a) through 10(c) relates to the wages, hours, and other terms and conditions of employment of the Units and are mandatory subjects for the purposes of collective bargaining.

11.

(a)     Since on or about June 27, 2019, Respondent insisted, as a condition of reaching any collective-bargaining agreement, that the Union agree to change its dues and initiation fee structure.

(b)     The condition described above in paragraph 11(a) is not a mandatory subject for the purposes of collective bargaining.

(c)    Since on or about June 27, 2019, in support of the condition described above in paragraph 11(a), Respondent has linked non-mandatory subjects with mandatory subjects, including Union Security, and demanded that the Union bargain over the non-mandatory subjects if Respondent were to reach agreement on the mandatory subjects.

12.

(a)    By its overall conduct at various times since about June 21, 2017, including the conduct described above in paragraphs 7 through 11, Respondent has engaged in bargaining with no intention of reaching agreement (surface bargaining); insisted upon proposals that are predictably unacceptable to the Union; refused to meet at reasonable times and/or places for bargaining; conditioned negotiations on non-mandatory subjects of bargaining; and denigrated the Union in the eyes of the Units' employees.

(b)    By its overall conduct at various times since about June 21, 2017, including the conduct described above in paragraphs 7 through 12(a), Respondent has failed and refused to bargain in good faith with the Union as the exclusive collective-bargaining representative of the Units.

13.

(a)    In or around late-November and early-December 2019, on dates better known to Respondent, Respondent assigned the bargaining unit work of shooting video at Portland Trailblazers games to a non-bargaining unit individual.

(b)    On or about January 7, 2020, on a date better known to Respondent, Respondent changed its vacation policy.

8

(c)     The subjects set forth above in paragraphs 13(a) and 13(b) relate to wages, hours, and other terms and conditions of employment of the Units and are mandatory subjects for the purposes of collective bargaining.

(d)     Respondent engaged in the conduct described above in paragraphs 13(a) and 13(b) without prior notice to the Union and/or without affording the Union an opportunity to bargain with Respondent with respect to this conduct and/or the effects of this conduct and/or without first bargaining with the Union to an overall good-faith impasse for a successor collective-bargaining agreement.

14.

On or about January 8, 2020, Respondent withdrew its recognition of the Union as the exclusive collective-bargaining representative of the Units.

15.

(a)     On or about January 8, 2020, Respondent removed the Union bulletin boards at its facility.

(b)     On or about January 8, 2020, Respondent, by Nevin during the same meeting in which Respondent announced it was withdrawing its recognition of the Union as described above in paragraph 14, announced that Unit employees would soon be getting a 1.5% wage increase.

(c)     On a date better known to Respondent in or about late-March and early-April 2020, Respondent implemented a 1.5% wage increase for Unit employees.

(d)     On a date better known to Respondent in or about April 2020, Respondent assigned the bargaining unit work of setting up Respondent's morning television program to a non-bargaining unit individual.

(e)     The subjects set forth above in paragraphs 15(a) through 15(d) relate to wages, hours, and other terms and conditions of employment of the Units and are mandatory subjects for the purposes of collective bargaining.

(f)     Respondent engaged in the conduct described above in paragraphs 15(a) through 15(d) without prior notice to the Union and/or without affording the Union an opportunity to bargain with Respondent with respect to this conduct and/or the effects of this conduct and/or without first bargaining with the Union to an overall good-faith impasse for a successor collective-bargaining agreement.

16.

(a)     On January 20, 2020, Respondent, by Director of Technology Rick Brown ("Brown") in Respondent's newsroom, told employees they should not talk about the Union.

(b)     On January 23, 2020, Respondent, by Brown in Respondent's newsroom, told employees they could not hand out Union bulletins because Respondent no longer recognizes the Union.

(c)     On June 25, 2020, Respondent, by Brown during a Zoom call with an employee, instructed employees not to discuss wages and wage increases.

(d)     On June 25, 2020, Respondent, by Brown during a Zoom call with an employee, made an implied threat to revoke wage increases if employees discussed their wage increases with each other.

17.

By the conduct described above in paragraphs 7 through 15, Respondent has been failing and refusing to bargain collectively with the Union as the exclusive collective-bargaining representative of its employees in violation of §§ 8(a)(1) and (5) of the Act.

18.

By the conduct described above in paragraph 16, Respondent has been interfering with, restraining, and coercing employees in the exercise of the rights guaranteed in § 7 of the Act in violation of § 8(a)(1) of the Act.

19.

The unfair labor practice of Respondent described above affects commerce within the meaning of §§ 2(6) and (7) of the Act.

**WHEREFORE**, as part of the remedy for Respondent's unfair labor practices alleged above, the General Counsel seeks an Order requiring Respondent to bargain in good faith with the Union, on request, for the period required by *Mar Jac Poultry*, as the recognized bargaining representative of the Units.

**WHEREFORE**, as part of the remedy for the unfair labor practices alleged above, the General Counsel seeks an Order requiring that at a meeting or meetings scheduled to ensure the widest possible attendance, that a supervisor or agent of Respondent identified above in Paragraph 4 read the Notice to the Employees in English on worktime in the presence of a Board agent. Alternatively, the General Counsel seeks an order requiring that Respondent promptly have a Board agent read the Notice to Employees during worktime in the presence of Respondent's supervisors and agents identified above in paragraph 4.

**WHEREFORE**, as part of the remedy for the unfair labor practices alleged above, the General Counsel seeks an Order requiring Respondent to:  (1) bargain on request within 15 days of a Board Order; (2) bargain on request for a minimum of 15 hours a week until an agreement or lawful impasse is reached or until the parties agree to a respite in bargaining; (3) prepare written bargaining progress reports every 15 days and submit them to the Regional Director and also serve the reports on the Union to provide the Union with an opportunity to reply; and (4) make whole employee negotiators for any earnings lost while attending bargaining sessions. The General Counsel further seeks all other relief as may be just and proper to remedy the unfair labor practices alleged.

## ANSWER REQUIREMENT

Respondent is notified that, pursuant to §§ 102.20 and 102.21 of the Board's Rules and Regulations, it must file an answer to the Second Consolidated Complaint.  The answer must be **received by this office on or before October 2, 2020.**  Respondent must serve a copy of the answer on each of the other parties.

The answer must be filed electronically through the Agency's website.  To file electronically, go to www.nlrb.gov, click on **E-File Documents,** enter the NLRB Case Number, and follow the detailed instructions.  The responsibility for the receipt and usability of the answer rests exclusively upon the sender.  Unless notification on the Agency's website informs users that the Agency's E-Filing system is officially determined to be in technical failure because it is unable to receive documents for a continuous period of more than 2 hours after 12:00 noon (Eastern Time) on the due date for filing, a failure to timely file the answer will not be excused on the basis that the transmission could not be accomplished because the Agency's website was off-line or unavailable for some other

reason.  The Board's Rules and Regulations require that an answer be signed by counsel or non-attorney representative for represented parties or by the party if not represented. *See* § 102.21.  If the answer is a pdf document containing the required signature, no paper copies of the answer need to be transmitted to the Regional Office.  However, if the answer to a complaint is not a pdf file containing the required signature, then the E-filing rules require that such answer containing the required signature continue to be submitted to the Regional Office by traditional means within three (3) business days after the date of electronic filing.  Service of the answer on each of the other parties must still be accomplished by means allowed under the Board's Rules and Regulations.  The answer may not be filed by facsimile transmission.  If no answer is filed, or if an answer is filed untimely, the Board may find, pursuant to a Motion for Default Judgment, that the allegations in the Second Consolidated Complaint are true.

### NOTICE OF HEARING

PLEASE TAKE NOTICE THAT **at 1 p.m.** on the **13th day of October, 2020**, at the **Green-Wyatt Federal Building, 1220 SW 3rd Avenue, Suite 605, Portland, Oregon, or via Zoom videoconference, if appropriate given the circumstances and status of the COVID-19 pandemic**, and on consecutive days thereafter until concluded, a hearing will be conducted before an administrative law judge of the National Labor Relations Board.  At the hearing, Respondent and any other party to this proceeding have the right to appear and present testimony regarding the allegations in this Second Consolidated Complaint.  The procedures to be followed at the hearing are described in the attached Form NLRB-4668. The procedure to request a postponement of the hearing is described in the attached Form NLRB-4338.

Dated at Seattle, Washington, this 18th day of September, 2020.

_Ronald K. Hooks_

Ronald K. Hooks, Regional Director
National Labor Relations Board, Region 19
Jackson Federal Building
915 2nd Ave., Ste. 2948
Seattle, WA 98174

Attachments

Form NLRB-4668
(6-2014)

# Procedures in NLRB Unfair Labor Practice Hearings

The attached complaint has scheduled a hearing that will be conducted by an administrative law judge (ALJ) of the National Labor Relations Board who will be an independent, impartial finder of facts and applicable law.  **You may be represented at this hearing by an attorney or other representative**.  If you are not currently represented by an attorney, and wish to have one represent you at the hearing, you should make such arrangements as soon as possible. A more complete description of the hearing process and the ALJ's role may be found at Sections 102.34, 102.35, and 102.45 of the Board's Rules and Regulations.  The Board's Rules and regulations are available at the following link: www.nlrb.gov/sites/default/files/attachments/basic-page/node-1717/rules_and_regs_part_102.pdf.

The NLRB allows you to file certain documents electronically and you are encouraged to do so because it ensures that your government resources are used efficiently.  To e-file go to the NLRB's website at www.nlrb.gov, click on "e-file documents," enter the 10-digit case number on the complaint (the first number if there is more than one), and follow the prompts.  You will receive a confirmation number and an e-mail notification that the documents were successfully filed.

**Although this matter is set for trial, this does not mean that this matter cannot be resolved through a settlement agreement**.  The NLRB recognizes that adjustments or settlements consistent with the policies of the National Labor Relations Act reduce government expenditures and promote amity in labor relations and encourages the parties to engage in settlement efforts.

## I.    BEFORE THE HEARING

The rules pertaining to the Board's pre-hearing procedures, including rules concerning filing an answer, requesting a postponement, filing other motions, and obtaining subpoenas to compel the attendance of witnesses and production of documents from other parties, may be found at Sections 102.20 through 102.32 of the Board's Rules and Regulations.  In addition, you should be aware of the following:

- **Special Needs:**  If you or any of the witnesses you wish to have testify at the hearing have special needs and require auxiliary aids to participate in the hearing, you should notify the Regional Director as soon as possible and request the necessary assistance.  Assistance will be provided to persons who have handicaps falling within the provisions of Section 504 of the Rehabilitation Act of 1973, as amended, and 29 C.F.R. 100.603.

- **Pre-hearing Conference:**  One or more weeks before the hearing, the ALJ may conduct a telephonic prehearing conference with the parties. During the conference, the ALJ will explore whether the case may be settled, discuss the issues to be litigated and any logistical issues related to the hearing, and attempt to resolve or narrow outstanding issues, such as disputes relating to subpoenaed witnesses and documents.  This conference is usually not recorded, but during the hearing the ALJ or the parties sometimes refer to discussions at the pre-hearing conference.  You do not have to wait until the prehearing conference to meet with the other parties to discuss settling this case or any other issues.

## II.    DURING THE HEARING

The rules pertaining to the Board's hearing procedures are found at Sections 102.34 through 102.43 of the Board's Rules and Regulations.  Please note in particular the following:

- **Witnesses and Evidence**:  At the hearing, you will have the right to call, examine, and cross-examine witnesses and to introduce into the record documents and other evidence.

- **Exhibits:  Each exhibit offered in evidence must be provided in duplicate to the court reporter and a copy of each of each exhibit should be supplied to the ALJ and each party when the exhibit is offered in evidence.**  If a copy of any exhibit is not available when the original is received, it will be the responsibility of the party offering such exhibit to submit the copy to the ALJ before the close of hearing.  If a copy is not

(OVER)

Form NLRB-4668
(6-2014)

submitted, and the filing has not been waived by the ALJ, any ruling receiving the exhibit may be rescinded and the exhibit rejected.

- **Transcripts**:  An official court reporter will make the only official transcript of the proceedings, and all citations in briefs and arguments must refer to the official record. The Board will not certify any transcript other than the official transcript for use in any court litigation.  Proposed corrections of the transcript should be submitted, either by way of stipulation or motion, to the ALJ for approval.  Everything said at the hearing while the hearing is in session will be recorded by the official reporter unless the ALJ specifically directs off-the-record discussion.  If any party wishes to make off-the-record statements, a request to go off the record should be directed to the ALJ.

- **Oral Argument:**  You are entitled, on request, to a reasonable period of time at the close of the hearing for oral argument, which shall be included in the transcript of the hearing.  Alternatively, the ALJ may ask for oral argument if, at the close of the hearing, if it is believed that such argument would be beneficial to the understanding of the contentions of the parties and the factual issues involved.

- **Date for Filing Post-Hearing Brief**:  Before the hearing closes, you may request to file a written brief or proposed findings and conclusions, or both, with the ALJ.  The ALJ has the discretion to grant this request and to will set a deadline for filing, up to 35 days.

## III.   **AFTER THE HEARING**

The Rules pertaining to filing post-hearing briefs and the procedures after the ALJ issues a decision are found at Sections 102.42 through 102.48 of the Board's Rules and Regulations.  Please note in particular the following:

- **Extension of Time for Filing Brief with the ALJ:**  If you need an extension of time to file a post-hearing brief, you must follow Section 102.42 of the Board's Rules and Regulations, which requires you to file a request with the appropriate chief or associate chief administrative law judge, depending on where the trial occurred.  You must immediately serve a copy of any request for an extension of time on all other parties and furnish proof of that service with your request.  You are encouraged to seek the agreement of the other parties and state their positions in your request.

- **ALJ's Decision:**  In due course, the ALJ will prepare and file with the Board a decision in this matter.  Upon receipt of this decision, the Board will enter an order transferring the case to the Board and specifying when exceptions are due to the ALJ's decision.  The Board will serve copies of that order and the ALJ's decision on all parties.

- **Exceptions to the ALJ's Decision**:  The procedure to be followed with respect to appealing all or any part of the ALJ's decision (by filing exceptions with the Board), submitting briefs, requests for oral argument before the Board, and related matters is set forth in the Board's Rules and Regulations, particularly in Section 102.46 and following sections.  A summary of the more pertinent of these provisions will be provided to the parties with the order transferring the matter to the Board.

FORM NLRB 4338
(6-90)

### UNITED STATES GOVERNMENT
### NATIONAL LABOR RELATIONS BOARD
### NOTICE

Cases 19-CA-248735 et al

The issuance of the notice of formal hearing in this case does not mean that the matter cannot be disposed of by agreement of the parties. On the contrary, it is the policy of this office to encourage voluntary adjustments. The examiner or attorney assigned to the case will be pleased to receive and to act promptly upon your suggestions or comments to this end.

An agreement between the parties, approved by the Regional Director, would serve to cancel the hearing. However, unless otherwise specifically ordered, the hearing will be held at the date, hour, and place indicated. Postponements **will not be granted** unless good and sufficient grounds are shown **and** the following requirements are met:

(1) The request must be in writing. An original and two copies must be filed with the Regional Director when appropriate under 29 CFR 102.16(a) or with the Division of Judges when appropriate under 29 CFR 102.16(b).

(2) Grounds must be set forth in **detail**;

(3) Alternative dates for any rescheduled hearing must be given;

(4) The positions of all other parties must be ascertained in advance by the requesting party and set forth in the request; and

(5) Copies must be simultaneously served on all other parties (listed below), and that fact must be noted on the request.

Except under the most extreme conditions, no request for postponement will be granted during the three days immediately preceding the date of hearing.

**E-Service:**

Charles W. Pautsch, Vice President of
Labor and Employment/Associate Counsel
Nexstar Media Group, Inc.
545 E. John Carpenter Fwy., Ste. 700
Irving, TX 75062
  Email: cpautsch@nexstar.tv

Anne I. Yen, Attorney
Weinberg, Roger & Rosenfeld
1001 Marina Village Pkwy., Ste. 200
Alameda, CA 94501-6430
  Email: ayen@unioncounsel.net

**E-Service**

Lisa Newell, Business Administrator
Nexstar Broadcasting, Inc.
d/b/a KOIN-TV
222 SW Columbia St., Ste. 102
Portland, OR 97201-6600
  Email: lisa.newell@koin.com

Carrie J. Biggs-Adams, President
NABET-CWA, Local 51, AFL-CIO
240 2nd St., Ste. 220
San Francisco, CA 94105
  Email: carrie@nabet51.org

EXHIBIT 4

UNITED STATES OF AMERICA
BEFORE THE NATIONAL LABOR RELATIONS BOARD
REGION 19

| | | |
|---|---|---|
| NEXSTAR BROADCASTING, INC. | ) | |
| d/b/a KOIN-TV, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) Case Nos. | 19-CA-248735 |
| And | ) | 19-CA-255180 |
| | ) | 19-CA-259398 |
| NATIONAL ASSOCIATION OF BROADCAST | ) | 19-CA-262203 |
| EMPLOYEES & TECHNICIANS, THE | ) | |
| BROADCASTING AND CABLE TELEVISION | ) | |
| WORKERS SECTOR OF THE COMMUNICATIONS | ) | |
| WORKERS OF AMERICA, LOCAL 51, AFL-CIO, | ) | |
| | ) | |
| Charging Party | ) | |

**ANSWER TO SECOND CONSOLIDATED COMPLAINT**

NEXTSAR BROADCASTING, INC. d/b/a KOIN-TV, ("KOIN", "Nexstar" or "Respondent"), pursuant to Section 102.20 of the NLRB Rules and Regulations, provides its ANSWER to the Second Consolidated Complaint filed upon the Charges of the NATIONAL ASSOCIATION OF BROADCASTING EMPLOYEES AND TECHNICIANS – COMMUNICATION WORKERS OF AMERICA, AFL-CIO, Local 51 ("NABET" or "Union").

KOIN responds as follows as to each of the allegations made in the Second Consolidated Complaint and then sets forth the following Defenses with respect to the events alleged in the Second Consolidated Complaint:

1

1.

(a)    As to Paragraph 1(a) of the Second Consolidated Complaint, Respondent admits, upon information and belief, that a Charge in 19-CA-248735 was filed by the Union against Respondent, on or about September 23, 2019, and served on it thereafter, but denies all allegations made in that Charge and this Complaint that it violated the National Labor Relations Act.

(b)    As to Paragraph 1(b) of the Second Consolidated Complaint, Respondent admits, upon information and belief, that an amended Charge in 19-CA-248735 was filed by the Union against Respondent, on or about April 24, 2020, and served on it thereafter, but denies all allegations made in that amended Charge and this Complaint that it violated the National Labor Relations Act.

(c)    As to Paragraph 1(c) of the Second Consolidated Complaint, Respondent admits upon information and belief, that a Charge in 19-CA-255180 was filed by the Union against Respondent, on or about January 24, 2020, and served on it thereafter, but denies all allegations made in that Charge and this Complaint that it violated the National Labor Relations Acts.

(d)    As to Paragraph 1(d) of the Second Consolidated Complaint, Respondent admits, upon information and belief, that a Charge in 19-CA-259398 was filed by the Union against Respondent, on or about April 21, 2020, and served on it thereafter, but denies all allegations made in that Charge and this Complaint that it violated the National Labor Relations Act.

(e)    As to Paragraph 1(e) of the Second Consolidated Complaint, Respondent admits, upon information and belief, that an amended Charge in 19-CA-259398 was filed by the

2

Union against Respondent, on or about June 5, 2020, and served on it thereafter, but denies all allegations made in that amended Charge and this Complaint that it violated the National Labor Relations Act.

(f)    As to Paragraph 1(f) of the Second Consolidated Complaint, Respondent admits, upon information and belief, that a second amended Charge in 19-CA-259398 was filed by the Union against Respondent, on or about July 30, 2020, and served on it thereafter, but denies all allegations made in that Charge and this Complaint that it violated the National Labor Relations Act.

(g)    As to Paragraph 1(g) of the Second Consolidated Complaint, Respondent admits, upon information and belief, that a charge in 19-CA-262203 was filed by the Union against Respondent, on or about June 25, 2020, and served on it thereafter, but denies all allegations made in that Chart and this Complaint that it violated the National Labor Relations Act.

2.

(a)    Respondent admits the allegations of Paragraph 2(a) of the Second Consolidated Complaint.

(b)    Respondent admits the allegations of Paragraph 2(b) of the Second Consolidated Complaint.

(c)    Respondent admits the allegations of Paragraph 2(c) of the Second Consolidated Complaint.

(d)    Respondent admits the allegations of Paragraph 2(d) of the Second Consolidated Complaint.

3

(e)     Respondent admits the allegations of Paragraph 2(e) of the Second Consolidated Complaint.

(f)     Respondent admits the allegations of Paragraph 2(f) of the Second Consolidated Complaint.

3.

Respondent admits the allegations of Paragraph 3 of the Second Consolidated Complaint.

4.

Respondent admits the allegations of Paragraph 4 of the Second Consolidated Complaint.

5.

(a)     Respondent admits the allegations of Paragraph 5(a) of the Second Consolidated Complaint.

(b)     Respondent admits the allegations of Paragraph 5(b) of the Second Consolidated Complaint.

(c)     Respondent denies the allegations of Paragraph 5(c) of the Second Consolidated Complaint.

(d)     Respondent denies the allegations of Paragraph 5(d) of the Second Consolidated Complaint.

6.

Respondent admits the allegations of Paragraph 6 of the Second Consolidated Complaint.

7.

(a)     Respondent denies the allegations in the Charge referenced in Paragraph 7(a) of the Second Consolidated Complaint, admitting only that a violation was found, and affirmatively states that the violations therein should not be used as a predicate act to this

4

Complaint since they are time-barred and due to the fact that the Charging Party NABET has itself bargained in bad faith, including by failing, refusing and unreasonably delaying in providing relevant information to Respondent KOIN necessary for the purpose of collective bargaining on multiple occasions.

(b)     Respondent denies the allegations in the Charge referenced in Paragraph 7(b) of the Second Consolidated Complaint admitting only that a violation was found, but affirmatively states that the matter is currently under review by the Circuit Court of Appeals in 20-71232 and 20-71480 and affirmatively states that the violations therein should not be used as a predicate act to this Complaint since they are time-barred.

(c)     Respondent denies the allegations in the Charge referenced in Paragraph 7(c) of the Second Consolidated Complaint, admitting only that a violation was found after hearing before an administrative law judge, and affirmatively states that Respondent has filed Exceptions to the Board in this matter and that the violations therein should not be used as a predicate act to the Complaint since they are time-barred under section 10(b) of the NLRA.

8.

(a)     Respondent denies the allegations of Paragraph 8(a) of the Second Consolidated Complaint and affirmatively states that the Union has frequently and routinely disparaged, defamed and otherwise disrespected the KOIN bargaining committee by making rude, abrasive, and vulgar statements at and away from the bargaining table designed to discourage dialogue and compromise, and further that the memos to employees contained statements protected by section 8(c) of the NLRA and addressing the unlawful activities of

5

NABET designed to coerce employees into union membership even though the contract between the NABET and KOIN had expired.

(b)      Respondent denies the allegation of Paragraph 8(b) of the Second Consolidated Complaint.

(c)      Respondent denies the allegations of Paragraph 8(c) of the Second Consolidated Complaint.

      i.      Respondent denies the allegations of Paragraph 8(c)(i) of the Second Consolidated Complaint.

     ii.      Respondent denies the allegations of Paragraph 8(c)(ii) of the Second Consolidated Complaint.

9.

(a)      Respondent denies the allegations of Paragraph 9(a) of the Second Consolidated Complaint and affirmatively states that it had legitimate grounds to oppose in bargaining NABET's unlawful and unjustified positions on union security.

(b) Respondent denies the allegations of Paragraph 9(b) of the Second Consolidated Complaint.

(c) Respondent denies the allegations of Paragraph 9(c) of the Second Consolidated Complaint.

(d) Respondent admits the allegations of Paragraph 9(d) of the Second Consolidated Complaint.

10.

(a)      Respondent admits the allegations of Paragraph 10(a) of the Second Consolidated Complaint.

6

(b)    Respondent denies the allegations of Paragraph 10(b) of the Second Consolidated Complaint.

(c)    Respondent denies the allegations of Paragraph 10(c) of the Second Consolidated Complaint and affirmatively states that the Union has bargained in bad faith on the topic of health insurance by failing to provide information upon request of the employer and that KOIN has filed an unfair labor practice charge (19-CB-248966) based upon this misconduct upon which the General Counsel has determined merit in that it alleged that "the Union unlawfully refused to provide certain relevant information pertaining to union sponsored benefit plans such as health and welfare" and, in a letter dated August 26, 2020, directed the Regional Director to issue Complaint upon this Charge absent settlement.

(d)    Respondent admits the allegations of Paragraph 10(d) of the Second Consolidated Complaint.

11.

(a)    Respondent denies the allegations of Paragraph 11(a) of the Second Consolidated Complaint.

(b)    Respondent denies the allegation of Paragraph 11(b) of the Second Consolidated Complaint.

(c)    Respondent denies the allegations of Paragraph 11 (c) of the Second Consolidated Complaint and affirmatively asserts that at no time did KOIN seek to change the dues or initiation fees structure of the Union, instead indicating in bargaining that it was unwilling to collect the union's initiation fees given that they were excessive and a detriment to its efforts to recruit and retain bargaining unit employees.

7

12.

(a)      Respondent denies the allegations of Paragraph 12(a) of the Second Consolidated Complaint, affirmatively asserting that it is NABET, and not KOIN, that has engaged in a pattern of bad-faith surface bargaining conduct over the parties' lengthy negotiations for a successor contract, as set forth in more detail in the paragraph 1 of the 'Defenses' below.

(b)      Respondent denies the allegations of Paragraph 12(b) of the Second Consolidated Complaint.

13.

(a)      Respondent denies the allegations of Paragraph 13(a) of the Second Consolidated Complaint.

(b)      Respondent denies the allegations of Paragraph 13(b) of the Second Consolidated Complaint.

(c)      Respondent admits the allegations of Paragraph 13(c) of the Second Consolidated Complaint.

(d)      Respondent  denies the allegations of Paragraph 13(d) of the Second Consolidated Complaint.

14.

Respondent admits the allegations of Paragraph 14 of the Second Consolidated Complaint in that it withdrew recognition from the Union on or about January 8, 2020, but affirmatively asserts that it did so because it had objective evidence that the union no longer enjoyed the support of a majority of employees in either of the bargaining units it had represented.

15.

(a)      Respondent admits the allegations of Paragraph 15(a) of the Second Consolidated Complaint.

(b)      Respondent denies the allegations of Paragraph 15(b) of the Second Consolidated Complaint.

(c)      Respondent admits the allegations of Paragraph 15(c) of the Second Consolidated Complaint.

(d)      Respondent denies the allegations of Paragraph 15(d) of the Second Consolidated Complaint.

(e)      Respondent admits the allegations of Paragraph 15(e) of the Second Consolidated Complaint, but affirmatively asserts that bargaining did not take place on these subjects since KOIN had lawfully withdrawn recognition from the NABET on January 8, 2020.

(f)      Respondent denies the allegations of Paragraph 15(f) of the Second Consolidated Complaint and affirmatively asserts that bargaining did not take place on these subjects since KOIN had lawfully withdrawn recognition from NABET on January 8, 2020.

16.

(a)      Respondent denies the allegations of Paragraph 16(a) of the Second Consolidated Complaint.

(b)      Respondent denies the allegations of Paragraph 16(b) of the Second Consolidated Complaint.

(c)      Respondent denies the allegations of Paragraph 16(c) of the Second Consolidated Complaint.

(d)     Respondent denies the allegations of Paragraph 16(d) of the Second Consolidated Complaint.

17.

Respondent denies the allegations of Paragraph 17 of the Second Consolidated Complaint.

18.

Respondent denies the allegations of Paragraph 18 of the Second Consolidated Complaint.

19.

Respondent denies the allegations of Paragraph 19 of the Second Consolidated Complaint.

**FURTHER DEFENSES**

1.  As its first defense, KOIN states that it is NABET, rather than KOIN that has bargaining in bad faith by the following and related acts:

    (a) refused to bargain in good faith over the mandatory topic of checkoff authorization of initiation fees, claiming falsely that KOIN was attempting to bargain over the amount of initiation fees when KOIN was only proposing that it not checkoff initiation fees,

    (b) Engaging in dilatory and evasive tactics designed to frustrate a bargain on terms for a successor contract differing in any material regards from the prior collective bargaining agreement even though that prior agreement contained terms regarding checkoff authorization and initiation fees that are unlawful,

10

(c) Sought to maintain unlawful requirements in its collective bargaining agreement with KOIN that bargaining unit employees are required as a condition of employment to make a payment in the form of an initiation fee, which is excessive and discriminatory,

(d) Refused to bargain in good faith with KOIN for contractual provisions that did not include a provision for compulsory union or agency shop provisions unlawfully coupled with the above stated excessive initiation fees and dues,

(e) Engaging in oppressive, hostile and demeaning conduct at the bargaining table, including referring to KOIN's negotiators with vulgar and derogatory terms,

(f) Issuing press releases and bulletins to bargaining unit employees containing false and defamatory statements about the ongoing negotiations between KOIN and NABET Local 51 with the purpose and effect of delaying and frustrating good faith bargaining,

(g) Repeatedly calling for lengthy caucuses when KOIN negotiators said something that appeared to be "upsetting" to the Union's chief negotiator Carrie Biggs-Adams, thus inhibiting free dialogue over disputed items,

(h) Refusing to provide KOIN with information necessary and relevant to bargaining in regards to the Union's stated position that it refused to indemnify KOIN in regards to liability that might arise in connection with the Union's interference with its motor vehicle policy, which led to the filing of 19-CB-223109 which the Regional Director concluded had merit but was dismissed on the condition that the information be provided and that no further violations were committed for the next six months.

(i)  Shortly after six months passed from the issuance of the Regional Director's decision in 19-CB-223109, NABET again refused to provide KOIN with information necessary and relevant to bargaining in regards to bargaining proposals made by it and KOIN on wages, severance and other then-current topics of bargaining, leading to the Order of the National Labor Relations Board in 19-CB-234944 that NABET bargained in bad faith by delaying for four months in providing in any response whatsoever to the request for information.

(j)  Refusing to provide KOIN with information necessary and relevant to bargaining in regards to checkoff authorization forms and procedures related to collection of initiation fees and dues that NABET utilized even though those forms and processes were embodied in the parties' expired collective bargaining agreement, with NABET's bargaining representative wrongfully asserting that said information was "none of the Company's business".

(k)  Refusing to provide KOIN with information necessary and relevant to bargaining in regards to various health and welfare plans sponsored by NABET on the pretext that said plans are only available to members of NABET when KOIN sought the information for comparative purposes because NABET wrongfully asserted that KOIN's health plans had inadequate coverage.

(l)  Engaging in overall surface bargaining.

2.  As its second defense, KOIN states that NABET restrained and coerced employees regarding the requirement that they pay excessive dues and initiation fees in order to maintain employment at KOIN-TV and that this unlawful bargaining position, not any

conduct on the part of KOIN, caused the failure of the parties' to reach a new collective bargaining agreement.

3.  As its third defense, KOIN states that it had substantial objective evidence that NABET had lost the support of a majority of the employees in the bargaining units that it represented at KOIN-TV, justifying, even requiring, KOIN's withdrawal of recognition on January 7, 2020.

4.  As its fourth defense, Respondent states that these charges were filed in bad faith as is evidenced by the fact that prior to and subsequent to the filing of the Charges, the Union has itself failed to bargain in good faith over a multitude of issues.

5.  As for its fifth defense, Respondent states that to the extent the allegations made in the Second Consolidated Complaint occurred six months prior to September 23, 2019, they are barred by the provisions of section 10(b) of the National Labor Relations Act.

6.  As for its  sixth defense, Respondent asserts that NABET has improperly elected to pursue this unfair labor practice proceeding in lieu of requesting representation elections in the two bargaining units that it lost support due in part to its' own legal and coercive conduct.

7.  As for its seventh defense, Respondent asserts unclean hands due to the Union's own illegal and coercive conduct by bargaining in bad faith and coercing bargaining unit members in their exercise of Section 7 rights and as a result, should be denied any equitable relief.

8.  As for its eighth defense, Respondent asserts that NABET is equitably barred from challenging the withdrawal of recognition of the two units because it has consistently violated the Act of its' own accord during the parties' bargaining of a new Agreement.

9.  As for its ninth defense, Respondent asserts that the Region in issuing this Complaint has failed to follow its own Rules and Regulations by not giving priority to an unfair labor

practice Charge (19-CC-242731) that Respondent filed against NABET over a year ago alleging a violation of section 8(b)(4) in connection with unlawful secondary picketing of a neutral advertiser of KOIN. *NLRB Rules and Regulations Section 102.89 and 102.95.*

10. As for its tenth defense, Respondent asserts that the Remedy sought by the General Counsel is wholly unjustified.

11. As for its eleventh defense, Respondent asserts, upon information and belief, that the Region is issuing this Complaint without sending the Charge relating to withdrawal of recognition to the General Counsel's Division of Advice violated the direction of outstanding General Counsel Memorandum(s) regarding the *Levitz* doctrine.

WHEREFORE Respondent respectfully requests that the Second Consolidated Complaint be dismissed in its entirety, and that Respondent be awarded such relief as is just and proper.

Dated this 30th day of September 2020.

/s/ Charles P. Roberts III
Charles P. Roberts III
Constangy, Brooks, Smith & Prophete, LLP
100 N Cherry Street, Suite 300
Winston-Salem, NC 27101
Telephone: (336) 721-6852
Facsimile:  (336) 283-0380
Email:  croberts@constangy.com

Timothy A. Davis
Constangy, Brooks, Smith & Prophete, LLP
2600 Grand Boulevard, Suite 750
Kansas City, MO 64108-4600
Telephone: 816.329.5910
Facsimile: 816.472.6401
Email: tadavis@constangy.com

6989461v.1

CERTIFICATE OF SERVICE

I certify that I have this 30th day of September, 2020, served the foregoing ANSWER on the following parties of record by electronic mail:

Elizabeth DeVleming
Sarah Burke
Counsel for General Counsel
NLRB – Region 19
2948 Jackson Federal Building, 915 Second Ave.
Seattle, WA  98174
Elizabeth.devleming@nlrb.gov
Sarah.Burke@nlrb.gov

Anne I. Yen
Weinberg, Roger & Rosenfeld
1001 Marina Village Pkwy., Ste. 200
Alameda, CA 94501-6430
ayen@unioncounsel.net


/s/ Charles P. Roberts III

15

6989461v.1